William Cass, et al. v. City of Dayton, et al. Oral Argument Not to Exceed Fifteen Minutes per Side. Matthew Schultz for the Appellant. Morning, Your Honors. May it please the Court, I'd like to reserve three minutes for a rebuttal. Your Honors, you've read the briefs, you know what this case is about. My client's decedent was shot in the head by a Dayton police officer and died a few weeks later as a result of the wound. The issue in this case is the summary judgment that was granted to the defendant on the basis of qualified immunity. The problem with the decision is that the District Court took the detective who took the shot at his word. Despite the evidence that contradicted his testimony. This is a violation of the rules handed down in Anderson, Matsushita, and most recently in Tolan. Why do we have to look to the word of the police officer one way or the other? Even your side's version of the facts has the police saying stop, the and proceeds ahead, strikes two police officers, and then continues on. I'm just at a loss to figure out why there is not a reasonable fear on the, on not this police officer, because that's not the test, a reasonable police officer believing that he posed a danger if, even if not to the other police on the scene, at least to the public. The evidence indicates there was no one in front of the car, your honor. That's not the test, is it? I'm sorry? That's not the test, is it? The test is whether it, whether there is an issue of fact as to whether anyone else is in danger. In the area, not directly in front of the car. The case law tends to indicate it's directly in front of the car, your honor. I don't, I don't think that's accurate. There are plenty of cases that talk about this issue of someone who is driving very dangerously and the reasonableness of the officer's action to keep him from driving further. They don't, it's not an immediate vicinity test, and I don't, I don't think you'll find any support in the case law for that, and there's plenty of case law that looks beyond the immediate vicinity to what the reckless driver might do down the road. Well, the case that we found that seems to be most like this is Fisher v. Memphis. In that case, the officer was actually, had his cruiser parked on the side of a street, a city street, and nearly got run down, fired into the car as he was jumping onto his own cruiser. Now, in that case, I think it'd be hard to argue that there weren't other vehicles or other pedestrians close by that that driver could have hit, but this court said that it was unreasonable to fire into the moving car where there was nobody, or there was an issue of fact as to whether anybody else was in danger. Well, even if we take that as the pivot point of the issue in this case, it really has nothing to do with taking the word of the police officer, does it? Well, I mean, what you're asking about, or I assumed what you were referring to with respect to Officer House's testimony, is whether he was firing out of revenge, or if he was firing out of a legitimate fear, but but that's not the test. You're right, Your Honor. The test is what an objectively reasonable police officer would do. So where's the fact question that we have to, that turns on Officer House's testimony? The problem is that the the district court kind of lost track of that, and instead decided that there was no legitimate question as to whether Detective House believed that there were other people in danger. We kind of lost track in realizing that the motivation isn't actually an issue. It's what the reasonable police officer in Detective House's position would have done. We have to look at the objective facts that House was hit. So was the other officer. Murphy and his colleague were in the area. House heard his partner's gun discharge, thinking that he was firing in self-defense. Those are the facts that we have to look at, right? We also need to look at the fact that Detective House said that once he rolled off the hood of the car, he landed facing in the same direction of the car. This is what he said in his deposition. So he could see what was ahead of the car. Then he immediately turned to his left and looked through the passenger window. Says he didn't see our client's decedent, but only focused on the driver. Now if you look at his testimony and Detective St. Clair's testimony and Sergeant John's testimony, as Detective House turned to the left, Detective St. Clair and Sergeant John's have been directly ahead of him and slightly to the left. He didn't see them either. The problem here is that Detective House didn't look to see if there is anybody else in danger before he took the shot. The cases that deal with reasonableness in this context take some account of the fact that events are rapidly evolving. You've got a quickly changing situation, correct? Yes, Your Honor. In all of that, there is the question of whether it is reasonable for a police officer to take a shot past someone who, as far as he knows, is not really involved in committing a crime and hasn't actually committed a crime. We just ran into him. Oh, I'm talking about Mr. Jordan, my client's decedent, who is in the passenger seat. Mr. Sturgill, absolutely he committed a crime. He had two police officers with his car. Mr. Jordan hadn't. But House wasn't shooting at Jordan. Well, that's the problem, Your Honor. He was shooting right past him. Well, then it becomes an accident, which certainly can't. I mean, you know, if it... Your Honor... You get out of the, you know, you sort of even get out of the whole constitutional violation context when he becomes somebody who just happened to be hit. Well, he didn't just happen to be there, Your Honor. Detective House said earlier that he noticed there was a passenger in the front passenger seat. Do you agree that there are lots of cases that make it clear that negligence alone, and I'm not asking you to concede that there was negligence alone here, but do you concede that if we were to find that there was only negligence here, not something more, that that's not enough to constitute a constitutional violation? I don't think negligence really figures into it at this stage, Your Honor. We're still talking about the reasonable officer. If he was shooting past somebody and you say he shouldn't have been shooting past the person because it increased the likelihood he'd hit an innocent person, it strikes me that's the essence of negligence. My understanding is that cases are clear that negligence alone does not give rise to a constitutional violation. Well, if you consider the relationship between the reasonable man and the reasonable police officer, Your Honor, acting unreasonably is what takes away the qualified immunity. So acting unreasonably is also what qualifies as negligence. Those may just be an accident of language. Judge McKeague is correct that there are plenty of cases that teach us what he just said, right? I believe you're correct. It takes something more than negligence, something like recklessness. And I would posit for the court that a moving vehicle would not fire through the passenger seat to attempt to hit the driver straight past the passenger who, as far as he knows, has committed no crime. So essentially what you're saying is if the party that really is at fault here, in other words the driver of the car, if he happens to intentionally or fortuitously be surrounded by passengers, then police officers really can't take any external steps like this to stop that fleeing car that's just demonstrated its propensity for havoc by hitting two police officers. Your Honor, there's case law that establishes that's a reasonable thing to do in certain situations, especially when the car's coming straight at the officer. I don't think we cited a case like that, but certainly it's in there. The situation here... In the most recent Supreme Court high-speed chase case whose name alludes me right now, basically involved the car, they chase the guy, he pulls off the highway, they think they've got him surrounded. He manages to get his car out of that surrounding of police officers somehow, and they said not only was it justified to shoot at him, but in that case one of the issues was how many shots. They said, I think they said that the 12 or 14 shots to stop this fleeing car was constitutional. Yes, Your Honor, and there's circumstances where that's true. So how do you distinguish that, that I've not described very articulately, with the facts of this case? It's a balancing test. There's different factors that we have to consider. The evidence is that in this case there wasn't actually anyone in front of the car. There's no evidence that there was anyone for the entire length of the parking lot ahead of where Mr. Sturgeon was driving. Are you familiar with the case that Judge McKeague is talking about? I don't believe I am, actually, Your Honor. I think the name of it is Plumhoff, but it's a case that was decided just within the last two or three months by the Supreme Court, and it deals with a very lengthy high-speed chase, and I was going to ask you how you fit what the Supreme Court said in that case into the facts of this case, but if you're not familiar with it, then... I'm afraid I'm not, Your Honor. And from your side of it, there is a one difference is there was this lengthy chase where the person had demonstrated their disregard of life and health and safety of others before they trapped him. The difference in this case is what he did after the police encountered him by disregarding a directive command to stop and then hitting two police officers with a car. It's also worth noting, Your Honor, that Detective St. Clair and Detective House actually created, put themselves in danger by putting themselves in the car in violation of a Dayton Police Department policy. They were both disciplined for that. You understand the case law says very clearly a constitutional violation does not arise out of violation of policy. Yes, Your Honor, but it's another factor to consider, along with the fact that there's no evidence that there was actually anyone in front of the car. So they deserved it and they shouldn't take action because they were stupid. It's worth questioning whether a police officer can create a dangerous situation and then take advantage of that dangerous situation in order to use force. It's something that I think the court ought to address. And I'm running out of time, but there is one other issue I wanted to talk to you about. With regard to the municipal liability, district courts have repeatedly held that an incomplete investigation after a constitutional violation has occurred cannot be the moving force behind an already completed action, which conflicts with this court's decisions in several different cases, most recently in Burgess v. Fisher, where the court held that an official with final decision-making authority ratified illegal actions will create Monell liability. This is a court, this is an issue that was briefed. But that's an acquiescence theory, so clearly supervisors can fail to take action that then emboldens, in this case, police officers to do something in the future. Right. But I I'm not familiar with one single case where an incident occurs and then there isn't an investigation of that one, and then the causation requirement that Monell requires under Section 1983 for municipal liability is satisfied in that case. It might be satisfied in a subsequent case, but not in that case. Well, and that's your, that's the question, Your Honor. How many cases like this do we need? Because I can start rattling off. Okay. And I see I'm out of time. Thank you. Ms. Schroeder. Good morning, Your Honors. May it please the court, my name is Kelly Schroeder. I'm here on behalf of the defendants at police, City of Dayton, and Detective David House. This court has asked some very good questions of my opponent. The test is not whether there was anybody directly in front of the vehicle at the time the shot was fired. You've got to look to the totality of the case. What did we know? We knew that one of the occupants of the car was a known drug dealer known to carry a weapon. We knew that they were active participants in a felony drug deal. We knew that Detective Mullins gave the signal for all the officers to move in. Detective House knew that 12 other officers would be converging on the scene to effectuate the arrest. Detective House parked his car to block the access to Edwin C. Moses Boulevard. He had his vest on. It said Dayton Police. He had his badge on. He gave commands. Stop the car. Detective Sinclair also got out of the car, gave the same commands. The driver actually stopped. Detective House thought that he was going to comply with the commands. That's when he talked. He got out of his car, moved to the front of the Taurus. Only then did the Taurus punch the accelerator, try to run him over. How does it fit into the analysis that arguably the officer did not position himself as he should have with respect to the vehicle and the fact that that resulted in his having to go over the hood and his being hit? Certainly, Your Honor. Perhaps there would be an argument if a car was careening down and my officer jumped in front of it and created the danger. But in this case, the car stopped. My officer thought that he complied. He went to effectuate the arrest, made contact with the officers. It was only once he got in front of the car that the driver punched the gas. The other factor, Your Honor, is that yes, Detective House was disciplined. He disputed that discipline. He appealed that discipline because he did not believe the moving the car was moving. But police policies and procedures do not set constitutional standards. I understand that. I'm just wondering if that factor is sufficient in this context to, I'm just wondering how you think it affects the analysis. I'm not trying to in the context of the analysis. Certainly. In this case, Your Honor, I just don't think it's a factor because the fact of the matter and these facts are undisputed, by the way. I think counsel wants to suggest that there's two competing set of facts. There just aren't. Detective House gave his testimony. Detective St. Clair gave his testimony. I think we've got a police affidavit, some exhibits, but nobody else gave testimony. There were other passengers in the vehicle who were locked up in prison for years. They didn't give testimony. So there is not two competing set of facts here. So I don't think it really plays into the analysis. I think that what Detective House knew at the time he fired the gun was that he thought his partner was behind him. He thought his partner was firing in self defense. He knew that 12 other officers were converging on the scene. He knew that this was a public place. There is a BP, a Wendy's, an economy lodge and McDonald's all side by side. There's one driveway connecting them all. This is a populated area at 7 p.m. It's open to the public. He was concerned about the safety of not only his fellow officers, but anybody, any of the public that could be at risk. Under those facts, your honor, we contend that the use of force was constitutional. Um, even if this court would find that the use of force was not constitutional or that there was an issue of fact, you still have to go on to the second prong of qualified immunity. And we submit that my opponent has not submitted any case law that clearly established that at the time of the event, Detective House would have known his conduct was unreasonable. As is your position, we don't even have to get to that prompt. It is my my position, your honor. If you decide the case on the merits on the Fourth Amendment claim, then I don't even think immunity matters. As to the municipal liability claim, I think and again, your honors, your questions have been all very much on point today. The case law establishes that in order for a municipality to be liable, some sort of action policy procedure must be the moving force behind the constitutional violation. In this case, there was an investigation after the alleged constitutional violation. And as a matter of law, there are several cases that say that, um, an investigation after a constitutional violation cannot be a moving force behind an already completed action. Okay. Last issue, your honors, is the state law claims. Again, we would ask this court to affirm the decision on the state law claims. Um, on the facts that we've discussed today, Detective House did not act in a malicious manner. He did not act in bad faith, recklessly or wantonly. In my understanding, I'm just looking at your reply brief briefly. You distinguish Fisher, which your, uh, fellow counsel says is the closest point case on point by the fact that there were competing versions of facts in that case. That's why summary judgment was was denied. Which case was it? Your honor? Fisher. I think it was Fisher was the one that he said was his most analogous best case. Yeah, your honor. On page seven and 17 of your reply. A couple things about Fisher. Um, the first thing is that he cited Fisher for the proposition that when cases are decided at the time, well, let me let me start over. He cited Fisher for the fact that when an event this is so hard to explain when an event happens, that's the case law that governs whether the decision was clearly established. And that's actually not what the case says. The case says that, um, later cases cannot establish clearly established precedent. Judge Gibbons is pointing out that I attributed that brief to to you. It's really it's really Mr Schultz's brief. But you did. You do discuss Fisher, but but really, fairly cursorly in your brief on 25 and 27. I just did you have anything else you want to say about Fisher? No, I don't. I don't think it stands for the proposition that my opponent cited it for your honor. I've read it several times. I thought he took the position that Fisher meant that if there was nobody directly in front of the car, there was not enough danger in the environment to justify the use of deadly force. I think that's what he was saying Fisher stood for. Do you have a comment on that? Yeah. And I just I don't think that's what the court held. And I just disagree with that as a precedent. Going back to as far as Gardner, the court has held that if there is the threat to others, to officers, to the public at large, then deadly force is authorized. In this case, the prior interactions driver hitting two police officers in a populated area. He's showing no intention to stop. He's trying to get away. He's gonna hit anybody in order to get away. And in those circumstances, your honor's deadly force was justifiable. I think the position of the plaintiff though is that despite the fact that he might try to run over somebody if they happen to be in his way, if there's no reasonable likelihood that somebody is in his way or would be, then deadly force is not justified. What do you believe the cases say about that? I think the cases say that when... Even when the general public is at harm, when somebody is driving so recklessly that they are a danger to others, whether or not somebody is within three feet of the car is just not important. What's important is that this person is gonna continue driving in a reckless fashion, willing to injure or kill anybody in order to get away, and that is a serious risk and justifies deadly force. Thank you. Okay. Anything else? All right. Mr. Schultz. Thank you, Your Honor. One of the things that we talked about earlier with regard to the timing is the issue of when a right becomes clearly established. And that was partially addressed in Fisher. I think she was actually thinking of the wrong Fisher case. This court in Burgess v. Fisher last summer said that a right is clearly established when the case that talks about that right, when the events in that case happen. So in this case, that would be May of 2008. You were talking about Fisher v. Memphis though, right? Yes. That's the case I was using as the precedent for this case. Well, a right can't clearly... Can't be established when the event occurs if the court doesn't establish that right until an opinion later on. It doesn't retroactively relate back to when the incident occurred. In the Burgess case, to avoid the Fisher, what this court said was that it's the events, the timing of the events in relationship to each other. You look to see what was established as of the timing of the events. That's correct. Is that what you meant? Right. I misunderstood you. For example, the events in Fisher, I believe, took place in somewhere around 1998. This is Burgess v. Fisher? No, Fisher v. Memphis. I'm sorry, Your Honor. Okay. And this court held that that right was clearly established as of the time of those events. That was approximately 10 years before the events in this case. Thus, that right was clearly established 10 years before the events in this case. And it's a complex idea, but... That's not complex at all. If Fisher is applicable under the facts, then you're right. It'd be clearly established. And I believe you're right, Your Honor. I did cite Fisher, Fisher v. Memphis, saying that the district court denied summary judgment to the defendants based on the fact that there was a genuine issue of material fact with regard to whether there was anyone in danger when the officer filed. That same question exists here, because there's no evidence that there was actually anyone in danger. Yes, it was a populated area, and yes, it was 7 o'clock at night, but that's conjecture. The jury would be entitled to find that there was no one in immediate danger. And that's one of the factors that's considered when we decide whether or not Detective House's actions were reasonable. There's an issue of fact here, and the district court, instead of viewing the facts in favor of the non movement, my client, view them in favor of the movement, the City of Dayton and Detective House. The Supreme Court has recently cautioned district courts about doing that in the Toland v. Cotton case, specifically in the context of deciding qualified immunity. And we all support our police officers. We all know that they put themselves in danger every day in order to protect us, but we can't let that get in the way of deciding whether or not their actions are reasonable. And don't we have to look to the second prong of the test? Oh, yes, you are. And if this is a close case about whether other individuals and particularly other police officers were in danger, if this is a close case on the facts, then don't you lose based on the second prong? Because as the facts are applied to the established constitutional rules, if it's a gray area, the officers get the benefit of the doubt? That's the thing, Your Honor. They can't in the context of summary judgment and qualified immunity. And as I said, the Fisher v. Memphis case is factually similar enough to this case that that right is clearly established 10 years beforehand. And the court has said that the cases that establish whether or not a right is clearly established don't have to be on all fours, was the phrase that the court used. They only have to be factually similar. They don't have to be exactly the same. And we actually cited two, five or six different similar cases. And assuming that Fisher says what you think it says, you don't think that that's at all implicated by Plumhoff, or you simply don't know? I haven't read the Plumhoff case, Your Honor. I'm sorry, I don't know. But we did cite two other cases that took place before the facts in this case. Sigley v. City of Parma Heights was decided in 2006. The State of Kirby v. Duva was decided in 2008, took place a couple of years earlier. Murray Roll v. Passenault and Rodriguez v. Passenault, based on the same sets of facts, were decided in 2007 and 2011. Thus, happened before the events of this case. Smith v. Kupp was decided in 2005, three years before the events of this case happened. We've given the court a litany of cases that are sufficiently factually similar to prove that this constitutional right was clearly established at the time the violation occurred. And I am well past my time, Your Honors. Thank you for listening. We thank you both for your argument. We'll consider the case carefully.